## SWIFT & CO. v. NEW YORK CENT. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

### No. 41.

**1. Carriers ⬉200—Shipper, requesting transportation between points as to which there was no published tariff, held entitled to recover payments in excess of reasonable rate (section 1, subd. 4, and section 6, subd. 1, Interstate Commerce Act, as amended [Comp. St. §§ 8563, 8569]).**

Under section 1, subd. 4, and section 6, subd. 1, Interstate Commerce Act, as amended (Comp. St. §§ 8563, 8569), it was carrier's duty, immediately on shipper's request for transportation between points on carrier's line, respecting which there was no published tariff, to publish a rate, and shipper was entitled to recover excess freight paid because of shipment over longer route.

**2. Carriers ⬉202—Application for attorney's fees in action on reparation award must be made to trial court.**

Where judgment dismissing complaint in action on reparation award of Interstate Commerce Commission is reversed for new trial, application for attorney's fees must be made to trial court on new trial.

16 F.(2d)—2

In Error to the District Court of the United States for the Southern District of New York.

Action by Swift & Co. against the New York Central Railroad Company and another. Judgment for defendants (3 F.[2d] 826), and plaintiff brings error. Reversed, and new trial awarded.

Defendants are common carriers, subject to the provisions of the Interstate Commerce Act (Comp. St. § 8563 et seq.). Plaintiff deals, among other things, in fresh meat, and the complaint sets forth that at a time stated certain quantities of fresh meat were tendered "to defendants at ship's side or landing place of vessel in Brooklyn, N. Y., within the free lighterage limits of New York harbor, consigned to (plaintiff) at the Thirty-Third Street station of defendants in New York." This allegation is admittedly true, and the meat belonged to plaintiff, and plaintiff made the tender to defendants.

It had not been customary for perishable goods, like fresh meat, to be delivered at the Thirty-Third Street station. Whether for this reason or another, or for no reason at all, there was no published tariff or schedule showing any rate, fare, or charge for transportation of fresh meat between "ship's side" in New York harbor and the Thirty-Third Street station. There was a tariff, however, duly published, from ship's side to Weehawken, N. J., and another from Weehawken to Thirty-Third Street; so the meat was taken to Weehawken and thence to Thirty-Third Street, and a charge made of the aggregate of the two tariffs last mentioned.

It is admitted that the published charge from ship's side to Weehawken was reasonable, and so was the charge from Weehawken to Thirty-Third Street; but plaintiff brought a claim for reparation against defendants before the Commission, alleging in substance that it was entitled to a reasonable charge for the transportation it asked for, viz. from ship's side to Thirty-Third Street; that there was no physical reason why the transportation could not be made direct, and the nonexistence of a published rate was no justification.

It appeared that, some time after the transaction complained of, defendants did make and publish a rate from ship's side to Thirty-Third Street, which rate was admittedly reasonable. The Commission awarded reparation, measuring its award by the difference between the aggregate of the rates originally charged and the amount of the subsequently published direct rate.

Plaintiff brought this suit to recover the amount of the reparation award. At trial below the complaint was dismissed, and plaintiff brought this writ.

Lewis A. Ackley, of New York City, Ross Dean Rynder and William N. Strack, both of Chicago, Ill., for plaintiff in error.

Alex S. Lyman, of New York City (William Mann, of New York City, of counsel), for defendants in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above) [1] This case lies within very narrow limits. Admittedly the several tariffs or charges imposed on plaintiff's beef were, considered by themselves, reasonable. If any one wished to send goods from alongside a ship within the lighterage limits of New York Harbor to Weehawken and thence to Thirty-Third Street, the charges made were reasonable and right. But plaintiff did not want to send any goods by that route; it requested transportation from alongside a ship to Thirty-Third Street, and defendants accepted the goods so consigned.

As it is not suggested that they could refuse the goods, or that they wished to refuse them, we shall assume that their duty as common carriers extended to the transportation of these goods. We think decision depends upon the proper interpretation of the opening words of subdivision 1 of section 6 of the Interstate Commerce Act, as amended, viz.:

"That every common carrier subject to the provisions of this act shall file with the Commission created by this act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route," etc. Comp. St. § 8569.

If any ship within lighterage limits in New York Harbor was a "point on its own route," then it was obligatory under the statute as we read it to publish and charge a reasonable rate from that ship to any other point on defendants' line. But it does not follow that defendants had the impossible task of anticipating the arrival of ships and the transportation from unexpected ships to unusual points of any and all cargoes, because, under subdivision 4 of section 1 of the statute, as amended, the common carrier's duty was to "provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates," etc. Comp. St. § 8563.

It was perfectly possible, when the request for transportation from ship's side to Thirty-Third Street was made, instantly to declare and publish a rate. It seems to us that this litigation has arisen from a queerly legalistic way of looking at so broad and fundamental a statute as the Interstate Commerce Act. It seems to us that, because defendants were taken by surprise at a request for direct transportation to Thirty-Third Street, they did no more than slavishly follow any existing routes, however circuitous, that would lead from the Brooklyn shore to Thirty-Third Street, Manhattan. The particular agent or officer who directed that to be done which was done said: "I directed it to be hauled up there, so it would not violate any law. I anticipated just this controversy. We performed what seemed to be a very foolish service; yet we had no alternative."

We think there was an alternative; i. e., the law not only permitted, but required, a tariff to be instantly proclaimed to suit the service which the defendants were willing to perform.

We have referred in this opinion only to the goods imported by the plaintiff. It also claimed in the complaint for excessive charges on goods exported. We do not perceive that the exported goods raise any other question of law than the one above treated.

[2] We are also asked to award an attorney's fee. As the case must go back for a new trial, that application must be made on that trial and to the trial court.

Judgment reversed, and new trial awarded; the costs of this court to plaintiff in error.